UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                          CASE NO. 8:16-cr-88-T-23AEP
                                          8:16-cv-3142-T-23AEP

BRIAN THOMAS
_____/

**O R D E R**

Thomas moves under 28 U.S.C. § 2255 (Doc. 1) to vacate and challenges the validity of his convictions for one count of both conspiracy to commit theft of government funds and the theft of government funds, for which offenses he is imprisoned for thirty months.

Rule 4, Rules Governing Section 2255 Cases, requires a preliminary review of the motion to vacate. Section 2255 requires denial of the motion without a response if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[1] (finding the summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not entitled to relief"); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b) [Rules Governing § 2255 Proceedings], allows the district court to

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . .'"). *See United States v. Deal*, 678 F.2d 1062, 1065 (11th Cir. 1982) (citing *Wright* and *Hart*). Thomas contends that his sentencing range was calculated incorrectly because he did not receive a minor role reduction and that trial counsel rendered ineffective assistance by not moving for a minor role reduction. Thomas is not entitled to a minor role reduction.

## **FACTS**[2]

> Brian Thomas conspired with others to convert U.S. Treasury checks to cash. These checks were either the product of Stolen Identity Refund Fraud (SIRF) or simply stolen. The stolen checks were either real refunds or were Social Security checks (e.g., disability). In order to convert the checks, the identities of real people were stolen, typically in the form of a person's name, including in the form of a falsified signature.
>
> Brian Thomas opened a Wells Fargo bank account, over which he alone had signature authority.
>
> Brian Thomas opened a Chase bank account, over which he alone had signature authority. This was a business account, "2Xtreme Production & Management," which is Brian Thomas' production company. (Brian Thomas is a truck driver and, on the side, a DJ.).
>
> On November 16, 2012, K.T. (doing business as T&T Photos) opened a Bank of America account, over which he had sole signature authority. Checks given to Brian Thomas were deposited into K.T.'s account.
>
> Beginning at least as early as December 2012, Indel Montfleury was involved with SIRF and stealing checks from the U.S. Post Office serving Forrest Hills (zip codes: 33612 and 33613).

---

[2] Because Thomas contends that his minor role entitles him to a two-level reduction, this order recounts Thomas's full admission of facts from the plea agreement. (Doc. 10 at 17–21)

Montfleury was in the middle of a group of people who either (1) filed SIRF tax returns or (2) stole tax refunds (and other checks from the stream of mail). Louis Gonzalez, then an employee of the Post Office, had access to the Forest Hills Post Office as part of his job and he took the checks from the Post Office and gave them to Montfleury. Montfleury then gave them to Brian Thomas to negotiate.

Brian Thomas met Montfleury through J.M., a SIRF-filer. J.M. told Montfleury that "Uncle Brian" would be in a position to negotiate the stolen checks.

Montfleury provided stolen checks to Thomas by placing the unendorsed stolen U. S. Treasury checks in an envelope, then driving to Thomas' home in Dade City, Florida, and placing the envelope in Thomas' mailbox. Once Thomas retrieved the stolen checks from his mailbox, he totaled the face value of the stolen checks and provided Montfleury with the dollar amount he would be able to give him. This information was communicated between Montfleury and Thomas via text messaging, recovered from Montfleury's phone.

Thomas had access to three bank accounts to negotiate these stolen checks. From February 2012 through July 2012, 37 U.S. Treasury federal tax refund and Social Security checks totaling $188,845.85 were deposited into Brian Thomas's Wells Fargo account. Thomas' business is not a registered Money Service Business (MSB). Thomas' account was eventually frozen.

The second bank account was opened on November 16, 2012, at Bank of America in the name of K.T., doing business as T & T Photos. From January 2013 through July 2013, 14 U.S. Treasury federal tax refund checks, totaling $71,425.88 were deposited in this account through various ATM machines in Pasco County, Florida, one of which was made payable to Brian L. Thomas at his home address for a tax refund in the amount of $10,524.73, dated March 1, 2013, while 11 of the 14 checks were made payable to individuals with zip codes of 33612 or 33613, which were serviced by the Forest Hills Post Office in Tampa, Florida. These checks (zip codes: 33612 and 33613) were identified as ones given to Brian Thomas by lndel Montfleury.

The third bank account was opened on August 15, 2013, at JP Morgan Chase Bank in the name of Brian Lamont Thomas,

dba 2Xtreme Production & Management Service. Thomas was the sole signatory on this account.

The individuals whose identities were stolen ranged in age with the oldest living victim being born in 1911. Nine of the people whose identities were stolen lived in New York, North Carolina, Tennessee, Ohio, Michigan, Georgia, and even Alaska. Four of the people live in the greater Tampa-area.

One of the victims, M.C., an elderly woman living in Pinellas County, Florida, explained to law enforcement how, when she received her Social Security checks in the mail, she would keep them on her dresser in her home until she needed money to pay a bill. It was when she was ready to pay a bill that she noticed she was missing one of her checks. She immediately contacted the Social Security Administration and reported that her check was missing. A U. S. Treasury check for Social Security benefits in the amount of $1,097.00 made payable to her, dated May 23, 2012, was deposited in Thomas' Wells Fargo bank account on May 29, 2012. She did not give her Social Security benefits checks to anyone nor authorize anyone to cash them on her behalf.

R.W. was an employee of Hillsborough County, Florida. Her federal tax refund check in the amount of $2,478.00 was deposited into Thomas' Bank of America account on July 15, 2013. At that time, R.W. was living in a residence within the 33612 zip code, that is, one that is serviced by the Forest Hills Post Office. R.W. does not know Thomas or his conspirators and did not authorize them to cash her check and in fact reported the tax refund check missing when it did not arrive in her mail. She did not give her tax refund check to anyone nor authorize anyone to cash it on her behalf.

In addition, conspirator S.D.M. had access to the mail for zip code 33710, which is, among others, the same zip code as identified on the address of the M.C. on certain U.S. Treasury checks. S.D.M. has been stealing mail from Pinellas County addresses and negotiating them through Brian Thomas and others.

Brian Thomas's legitimate occupation(s) involve serving as a truck driver. As such, he travels across state lines. The investigation identified a convenience store that is also an MSB in Denham Springs, Louisiana, a neighboring city of Baton Rouge, that deposited a Social Security benefits check in the

amount of $1,097.00 made payable to M.C. (St. Petersburg, FL 33710-1640), dated June 27, 2012. This check was reported stolen to the SSA. Between April 2012, and September 2012, this convenience store deposited $447,200.62 in U.S. Treasury checks from the Tampa Bay area. It does not appear that the checks so deposited were legitimate. Analysis of Thomas' cellular telephone records from November 2011 through June 2013 revealed Thomas was in regular and frequent contact with a mobile phone number in Jackson, Louisiana, a neighboring city of Baton Rouge.

Brian Thomas is connected to at least 51 either stolen or SIRF-related checks that were negotiated either directly or indirectly by Brian Thomas. The victims had their identities stolen either (1) when the legitimate checks were stolen from a Post Office, a false signature for the victims affixed to the back of the checks, and then deposited; or (2) when their identities were used to file fraudulent tax returns, false signatures affixed to the back of the checks, and then deposited. Total loss to the United States attributable to Brian Thomas is at least $260,271.73.

## PLEA AGREEMENT

Thomas's conviction is based on a negotiated plea, in which he "expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range," except for three inapplicable exceptions. (Doc. 25 at 14 in 16-cr-88) Because the plea agreement omits waiving the right to collaterally challenge his sentence, the motion to vacate is not barred by the appeal waiver, as *Thompson v. United States*, 353 Fed. App'x 234, 235–36 (11th Cir. 2009), explains:

> When a valid sentence-appeal waiver containing express language waiving the right to attack a sentence collaterally is entered into knowingly and voluntarily, it will be enforceable and serve to prevent a movant from collaterally attacking a sentence on the basis of ineffective assistance of counsel. *Williams,* 396 F.3d [1340,] 1342 [(11th Cir.), *cert. denied*, 546 U.S. 902 (2005).

> As the government concedes in its brief, the district court erred
> in reading *Williams* to apply to sentence-appeal waivers, as
> here, that do not specifically contemplate collateral attacks.

Thomas scored an Offense Level 17 (after a three level reduction for acceptance of responsibility). Thomas's lack of a criminal history placed him in Criminal History Category I. Based on these factors (Criminal Offense Level 17 and Criminal History Category I), Thomas's advisory sentencing range was 24–30 months. Thomas's sentence of thirty months is the high end of the guidelines.

## MINOR ROLE

Section 3B1.2, United States Sentencing Guidelines, authorizes a two-level reduction when calculating a defendant's offense level if "the defendant was a minor participant." Application Note 5 describes a minor participant as "someone who is less culpable than most other participants, but whose role could not be described as minimal."

First, Thomas asserts entitlement to the retroactive application of Amendment 794 to the Sentencing Guidelines, which amendment clarifies entitlement to the minor role reduction, and alleges that counsel was ineffective for not moving for a minor role reduction. Because he was sentenced nearly a year after Amendment 794, Thomas's sentence was calculated with the benefit of the clarifying amendment.

Second, although he pleaded guilty to conspiracy, Thomas was indicted without a co-defendant and he was held accountable based solely on acts directly attributable to him. As a consequence, a mitigating role reduction is inapplicable. *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006) ("When the

relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove that he is entitled to a minor-role adjustment simply by pointing to some broader scheme for which he was not held accountable.") (*per curiam*). *See United States v. Doniz-Galan*, 646 Fed. App'x 867, 870 (11th Cir. 2016) (quoting *Alvarez-Coria*). Moreover, as detailed above and as discussed below, Thomas was not "less culpable than most participants."

Finally, Thomas cannot show that counsel rendered ineffective assistance. *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim and requires proof of both deficient performance and resulting prejudice. A claim of ineffective assistance fails absent proof of either requirement. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Thomas cannot prove prejudice, even if counsel's not moving for a minor role reduction was somehow deficient. Thomas admitted in his plea agreement (1) that "he alone had signatory authority" for two of the three bank accounts that were used to defraud the government of more than $250,000, (2) that the conspiracy involved at least fifty-one fraudulent transactions, and (3) that he was responsible for determining both the total value of the stolen checks and the fee to pay the co-conspirator who stole the checks. After carefully considering the factors under 18 U.S.C. § 3553(a), which a court must consider in fashioning a fair sentence, the district court determined that a sentence at the high

end of the advisory sentencing range was a fair and just sentence. Counsel's motion for a minor role reduction, if counsel had so moved, would have failed.

Accordingly, the motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**. The motion for a default judgment (Doc. 5) is **DENIED**. The clerk must enter a judgment against Thomas, close this case, and enter a copy of this order in the criminal action.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Thomas is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Thomas must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Thomas is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Thomas must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 30, 2017.

*[signature]*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE